Ken Wise, Justice *883 Appellants are two media outlets and their reporters. Appellee, a corporation, filed suit against appellants, asserting claims for libel and business disparagement after appellants published articles based on a police report of a shooting at appellee's bar. Two of the appellants filed an answer that included a verified plea in abatement under the Defamation Mitigation Act (DMA). Appellee did not challenge the plea in abatement by filing a controverting affidavit; consequently, the suit was automatically abated "in its entirety" without a court order and "[a]ll statutory and judicial deadlines under the Texas Rules of Civil Procedure" other than those provided in the DMA were stayed. After the sixty-day abatement period ended, appellants moved to dismiss appellee's claims under the Texas Citizens Participation Act (TCPA), 120 days after the earliest date an appellant was served with appellee's lawsuit. The TCPA requires that a motion to dismiss "must be filed" not later than sixty days after the date of service of the suit. The trial court denied appellants' motions to dismiss as untimely. It is undisputed that if the abatement period applied to the TCPA, appellants' motions to dismiss were timely filed.[1]
On appeal, we address an issue of first impression in a Texas appellate court: whether the DMA's abatement period applies to toll the TCPA's deadline to file a motion to dismiss. We conclude, based on the plain language and complementary purposes of the two statutory schemes, that the Legislature intended the DMA and TCPA to work in tandem to provide plaintiffs the opportunity to mitigate any perceived defamation damages at an early stage in the dispute and then, should the dispute remain unresolved, to permit a defendant to test the merits of the plaintiff's case though a TCPA motion to dismiss.
Because the DMA abatement period tolled the TCPA's filing deadline, and because appellants' motions to dismiss were timely filed after the abatement period ended, the trial court erred by ruling that the motions were untimely. We therefore reverse and remand the case to the trial court for further proceedings.
FACTUAL AND PROCEDURAL BACKGROUND
On the night of April 19, 2016, a man was shot at the 3700 block of Dowling *884 Street near downtown Houston. A Houston Police Department (HPD) lieutenant reported information about the shooting to members of the news media, specifically:
About 9:30, a South Central Patrol officer was dispatched to 3700 Dowling to a bar on a shooting. Upon arrival, they found a male who'd been shot in the arm.
Initial indications are that the male that was shot was a member of a band. He got in an argument with the owner of the bar about how long the band was going to play. During the argument, the manager produced a weapon and shot the male one time in the arm. The manager fled the location. Male has been transported to Hermann Hospital in stable condition.
A bar known as the Status Lounge was located at 3710 Dowling Street.
A. The Media Articles
The next day, The Houston Chronicle, a publication of appellant Hearst Newspapers, LLC (the Chronicle), published an article about the shooting written by Dale Lezon on its website chron.com. The article was titled "Musician shot at bar in south Houston[.]" Among other things, the Chronicle article reported that police were "continuing to search for the person who shot a musician Tuesday night at a nightclub near downtown Houston" and that the victim "was shot about 9:30 outside the Status Lounge, 3708 Dowling." The Chronicle article also reported that "[w]itnesses told police the gunman was the owner of the nightclub" and that according to the witnesses, "the victim and the assailant got into an argument about how long the band was going to play that night." Accompanying the Chronicle article was a photograph of the bar.[2]
That same day, appellant KHOU-TV, Inc. (KHOU) also published on its website KHOU.com an article titled "HPD: Bar owner accused of shooting band member [.]" The unattributed KHOU article began: "A dispute between a bar owner and a band he hired escalated into a shooting late Tuesday." The KHOU article reported that according to HPD, "an argument ensued between the bar owner and the band he had hired to play at the bar" and "[i]nvestigators said they were arguing over how much the owner paid for, and how long they were supposed to play." The KHOU article continued: "The band started packing up and leaving after an hour, but the owner got mad because he believed they were supposed to play for two hours. The owner got his gun and ended up shooting the lead band member in the arm." The article concluded by stating that "[t]he owner was taken into custody." The KHOU article did not name Status Lounge, but it included a photograph of the bar.
B. The Trial Court Proceedings
In August 2016, Status Lounge Incorporated (Status Lounge)[3] filed suit against the Chronicle and Dale Lezon (the Chronicle *885 Parties), and KHOU and William Langlois[4] (the KHOU Parties).[5] Status Lounge also sued Gannett Co., Inc., but later nonsuited the claims against that defendant.
In its petition, Status Lounge represented that it was "a premium lounge and cigar bar located near downtown Houston, Texas." Status Lounge alleged that in April 2016, a musician who was scheduled to perform was shot at a nearby liquor store, not at Status Lounge, but Langlois and Lezon told the public that the musician was shot by the owner of Status Lounge after an argument about the musician's fees. Status Lounge asserted that Langlois and Lezon did not fact check their stories and did not reach out to Status Lounge for comment. Later, a representative of Status Lounge personally contacted them to alert them to the error and to encourage them "to review corporate filings with the Texas Secretary of State." Instead, Status Lounge alleged that Langlois and Lezon "stood by their inaccuracies" and did not report the information it had provided to them. As a result of the stories, Status Lounge claims that its "previously loyal customers stopped frequenting the establishment, and the company's profits took an immediate hit" from which it has not fully recovered. Status Lounge sought actual and exemplary damages based on claims of libel and business disparagement.
On August 8, 2016, five days after Status Lounge filed its lawsuit, KHOU received a letter from Status Lounge's counsel requesting that KHOU correct, clarify, or retract its article. In the letter, dated August 3, 2016, Status Lounge complained that the article made untrue and defamatory statements that hurt the club's reputation and profits. Specifically, Status Lounge asserted that the shooting did not occur on Status Lounge property, the owner of the club did not shoot anyone, and the musician stated on social media that he had no problems with Status Lounge or its owners or managers. Status Lounge stated that a representative of the club, Raymond Murray, had contacted KHOU and provided the same information, requested appropriate steps to correct the article, and urged KHOU to consult Secretary of State filings to confirm that the owner was not even mentioned in any of the police reports.
KHOU responded through its counsel on August 23, 2016. KHOU stated that at the time the article was posted, it relied on information provided by law enforcement and accurately conveyed that information. KHOU further stated that it would like to correct any mistaken facts and requested information as to the identity of the shooter and whether there was any affiliation between the shooter and Status Lounge.
In reply, counsel for Status Lounge sent a letter attaching a Facebook post authored by James Oneal, whom Status Lounge asserted was "the victim of the *886 shooting."[6] Status Lounge also claimed that Oneal wrote the post to "correct what he knew was an inaccurate report by your client and others." Status Lounge asserted that if KHOU had reached out to Oneal, he presumably would have told KHOU the same things he stated in the post. Additionally, Status Lounge complained that the police report made no reference to Status Lounge, and suggested that if KHOU had searched Secretary of State records, it easily would have determined that no one involved in Status Lounge's operations was in any way involved in the shooting.
The defendants were served with Status Lounge's lawsuit on September 12 and 15, 2016. The defendants filed answers generally denying the allegations in the lawsuit and asserting various defenses. The KHOU Parties filed their answer on October 3, and the Chronicle Parties filed their answer on October 10.
The KHOU Parties attached numerous exhibits to its answer and alleged, among other things, that Status Lounge did not file a timely and sufficient request for a retraction under the Defamation Mitigation Act (DMA). See Tex. Civ. Prac. & Rem. Code §§ 73.051 -.062. The KHOU Parties' answer also included a verified plea in abatement under the DMA. See id. § 73.062(a). The KHOU Parties alleged that Status Lounge filed suit without providing the pre-suit notice required by the DMA, and the request Status Lounge eventually did make was not "timely and sufficient" as required because it did not: (1) state with particularity every statement alleged to be false and defamatory and to the extent known, the time and place of publication, (2) did not allege the defamatory meaning of the statement(s) as to Status Lounge, and (3) did not specify the circumstances causing a defamatory meaning of the statement if it arose from something other than the express language of the publication. See id. § 73.055(d).
Status Lounge did not file a controverting affidavit in response to KHOU's plea in abatement. See id. § 73.062(b). The parties agree that the lawsuit was automatically abated for sixty days, beginning on October 14, 2016, and running through December 12, 2016. See id. § 73.062(b), (c).
On January 10, 2017, the Chronicle Parties and the KHOU Parties each filed motions to dismiss the lawsuit pursuant to the Texas Citizens Participation Act (TCPA). See Tex. Civ. Prac. & Rem. Code §§ 27.001 -.011. Status Lounge filed objections, asserting that the motions were untimely because the TCPA requires that a motion to dismiss "must be filed not later than the 60th day after the date of service of the legal action." See id. § 27.003(b). Status Lounge also filed a supplemental response in which it argued that the TCPA is unconstitutional and that the defendants' motions to dismiss should be denied on the merits. According to Status Lounge, the Chronicle's and KHOU's articles were false because: no owner or employee of the bar shot anyone or was taken into custody; the shooting did not take place at the bar; and there was no dispute with the band over fees. Status Lounge also alleged that it was damaged as a result of the reports, and attached supporting exhibits to its response. Several hearings were held on the motions.
*887 On April 5, 2017, the trial court signed an order sustaining Status Lounge's objections to the defendants' motions to dismiss pursuant to the TCPA. The order reflected that the motions were dismissed "as untimely." The Chronicle Parties and the KHOU Parties then filed these interlocutory appeals. See id. § 51.014(a)(12).
THE TIMELINESS OF THE TCPA MOTIONS TO DISMISS
In their first issues, the defendants argue that the trial court erred in denying their motions to dismiss Status Lounge's defamation claims as untimely, when the motions to dismiss were filed within sixty days of service, excluding the time the suit was abated under section 73.062 of the DMA from October 14, 2016, through December 12, 2016. Status Lounge does not dispute that the defendants' motions to dismiss are timely if the abatement period applies to the deadline to file a TCPA motion to dismiss.
A. Standard of Review
We review de novo the trial court's construction of the TCPA and the DMA, as well as the trial court's ruling on the TCPA motion to dismiss. See Lippincott v. Whisenhunt , 462 S.W.3d 507, 509 (Tex. 2015) (per curiam); Cox Media Grp., LLC v. Joselevitz , 524 S.W.3d 850, 859 (Tex. App.-Houston [14th Dist.] 2017, no pet.). Our primary objective is to give effect to the Legislature's intent. Lippincott , 462 S.W.3d at 509. We rely on the plain meaning of the text unless a different meaning is supplied by legislative definition or is apparent from the context, or the plain meaning would lead to absurd results. Crosstex Energy Servs., L.P. v. Pro Plus, Inc. , 430 S.W.3d 384, 389-90 (Tex. 2014) ; Tex. Lottery Comm'n v. First State Bank of DeQueen , 325 S.W.3d 628, 635 (Tex. 2010).
In determining legislative intent, we analyze the statutory language in context, considering the specific section at issue as well as the statute as a whole. CHCA Woman's Hosp., L.P. v. Lidji , 403 S.W.3d 228, 232 (Tex. 2013). We presume that the Legislature included each word in the statute for a purpose and that words not included were purposefully omitted. Lippincott , 462 S.W.3d at 509. Finally, in construing the two statutory schemes, we are mindful of the legislative mandate that both the TCPA and the DMA are to be "liberally construed." See Tex. Civ. Prac. & Rem. Code § 27.011(b) (providing that the TCPA "shall be construed liberally to effectuate its purpose and intent fully"); id. § 73.051 (providing that the DMA "shall be liberally construed").
B. Overview of the Statutes at Issue
1. The Texas Citizens Participation Act
The TCPA is "sometimes referred to as an anti-SLAPP law-the acronym standing for strategic lawsuit against public participation." KBMT Operating Co. v. Toledo , 492 S.W.3d 710, 713 n.6 (Tex. 2016). The TCPA's purpose is to "encourage and safeguard the constitutional rights" of people to "petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law" while simultaneously protecting an individual's right "to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code § 27.002 ; see In re Lipsky , 460 S.W.3d 579, 589 (Tex. 2015) (orig. proceeding) (observing that the TCPA's purpose "is to identify and summarily dispose of lawsuits designed only to *888 chill First Amendment rights, not to dismiss meritorious lawsuits"). The TCPA provides for dismissal of a "legal action" that is "based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association" as defined by the statute. Tex. Civ. Prac. & Rem. Code § 27.003(a) ; Lipsky , 460 S.W.3d at 586-87.
To effectuate the statute's purpose, the Legislature has provided a two-step procedure to expedite the dismissal of claims brought to intimidate or to silence a defendant's exercise of its First Amendment rights. ExxonMobil Pipeline Co. v. Coleman , 512 S.W.3d 895, 898 (Tex. 2017) (per curiam). Under the first step, the burden is initially on the defendant-movant to show "by a preponderance of the evidence" that the plaintiff's claim "is based on, relates to, or is in response to the [movant's] exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association." Lipsky , 460 S.W.3d at 586-87 (footnotes omitted) (quoting Tex. Civ. Prac. & Rem. Code § 27.005(b) ). If the movant is able to demonstrate that the plaintiff's claim implicates one of these rights, the second step shifts the burden to the plaintiff to "establish[ ] by clear and specific evidence a prima facie case for each essential element of the claim in question." Id. at 587 (quoting Tex. Civ. Prac. & Rem. Code § 27.005(c) ). Even if the plaintiff satisfies the second step, the court shall dismiss the action if the defendant "establishes by a preponderance of the evidence each essential element of a valid defense" to the plaintiff's claim. ExxonMobil Pipeline Co. , 512 S.W.3d at 899 (quoting Tex. Civ. Prac. & Rem. Code § 27.005(d) ).
The TCPA requires that the motion to dismiss "must be filed not later than the 60th day after the date of service of the legal action." Tex. Civ. Prac. & Rem. Code § 27.003(b). However, the court "may extend the time to file a motion under this section on a showing of good cause." Id. Once a TCPA motion to dismiss has been filed, "all discovery in the legal action is suspended until the court has ruled on the motion." Id. § 27.003(c). An exception to the discovery stay exists for specific and limited discovery relevant to the motion to dismiss which may be allowed by the court on its own or a party's motion and upon a showing of good cause. Id. § 27.006(b).
A successful movant is entitled to an award of "court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require"Id. § 27.009(a)(1). Additionally, the movant is entitled to "sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions." Id. § 27.009(a)(2). Appeals from the denial of a motion to dismiss, whether interlocutory or not, are expedited. See id. § 27.008(b).
2. The Defamation Mitigation Act
The DMA was enacted by the Texas Legislature in 2013 to "provide a method for a person who has been defamed by a publication or broadcast to mitigate any perceived damage or injury." Id. § 73.052. The DMA applies to "a claim for relief, however characterized, for damages arising out of harm to personal reputation caused by the false content of a publication" and to "all publications, including writings, broadcasts, oral communications, electronic transmissions, or other forms of transmitting information." Id. § 73.054.
Under the DMA, a person may maintain an action for defamation only if: "(1) the *889 person has made a timely and sufficient request for a correction, clarification, or retraction from the defendant; or (2) the defendant has made a correction, clarification, or retraction." Id. § 73.055(a). A request for correction, clarification, or retraction is timely if it is made during the period of limitations applicable to a claim for defamation. Id. § 73.055(b). A person who does not request a correction, clarification, or retraction within ninety days after receiving knowledge of a publication may not recover exemplary damages. Id. § 73.055(c). If a correction, clarification, or retraction is made in accordance with the DMA, regardless of whether the person claiming harm made a request, a person may not recover exemplary damages unless the publication was made with actual malice. Id. § 73.059.
Relevant here, a defendant in a suit to which the DMA applies who does not receive a timely and sufficient written request for correction, clarification, or retraction "may file a plea in abatement not later than the 30th day after the date the person files an original answer in the court in which the suit is pending." Id. § 73.062(a).[7] The suit is "automatically abated, in its entirety, without the order of the court," beginning on the eleventh day after the date the plea in abatement is filed if the plea in abatement: "(1) is verified and alleges that the person against whom the suit is pending did not receive the written request as required by Section 73.055; and (2) is not controverted in an affidavit filed by the person bringing the claim before the 11th day after the date on which the plea in abatement is filed." Id. § 73.062(b).
The abatement continues until the sixtieth day after the date the written request is served or a later date agreed to by the parties. Id. § 73.062(c). During the pendency of the abatement period, the DMA expressly provides that "[a]ll statutory and judicial deadlines under the Texas Rules of Civil Procedure relating to a suit abated under Subsection (b), other than those provided in this section, will be stayed during the pendency of the abatement period under this section." Id. § 73.062(d).
C. Application of Both Statutory Schemes in a Defamation Action
As an initial matter, we note that Status Lounge does not dispute that its lawsuit satisfies the first step required of a defendant to assert a TCPA motion to dismiss because the lawsuit is based on, relates to, or is in response to the defendants' exercise of their right of free speech on a matter of public concern, namely, a shooting in a Houston community. See id. § 27.005(b)(1) ; see also id. § 27.001(3), (7) (defining "[e]xercise of the right of free *890 speech" to mean "a communication made in connection with a matter of public concern," which includes, among other things, an issue related to health or safety, community well-being, and the government). Status Lounge contends, however, that the TCPA's express language and its purpose of providing for the expedited dismissal of lawsuits implicating certain constitutional rights are inconsistent with the application of the DMA.
Central to Status Lounge's position is the argument that the defendants' motions to dismiss are untimely based on the plain language of the TCPA, which provides that a motion to dismiss "must be filed" not later than the sixtieth day after the date of service of the legal action. See id. § 27.003(b). In this case, both the Chronicle Parties and the KHOU Parties were served by September 15, 2016, and they all answered by October 10, 2016. Thus, Status Lounge asserts, their motions to dismiss under the TCPA were due, at the latest, on November 14, 2016. Because the motions to dismiss were filed nearly sixty days after this deadline, Status Lounge maintains that they were untimely. See Estate of Check , 438 S.W.3d 829, 836-37 (Tex. App.-San Antonio 2014, no pet.) (holding amended counterclaim that added no new parties or claims did not reset the TCPA's sixty-day deadline for filing a motion to dismiss, reasoning that contrary interpretation of statute would conflict with the Legislature's purpose of expediting dismissals early in the litigation process).[8] Status Lounge additionally argues that the Chronicle Parties' motion to dismiss was untimely in any event, because the Chronicle Parties did not file a plea in abatement.
The KHOU Parties respond that Status Lounge's argument is undercut by the TCPA's exception allowing a court to extend the filing deadline for good cause. See Tex. Civ. Prac. & Rem Code § 27.003(b). Additionally, the defendants assert that their motions to dismiss were timely because the motions were filed within the TCPA's sixty-day deadline, excluding the time the suit was abated under the DMA. See id. § 73.062. And, because the action was abated "in its entirety," the Chronicle Parties argue that their motion to dismiss was timely filed even though it did not file its own plea in abatement. Id. § 73.062(b).
Status Lounge disagrees, arguing that the defendants' reliance on the DMA is problematic in several respects. Status Lounge asserts that not only would filing and deciding a TCPA motion to dismiss after a party invokes the DMA be contrary to the plain language of the TCPA's filing deadline, it would also be antithetical to the underlying purpose of the TCPA, which is to provide for "expedited consideration of any suit that appears to stifle the defendant's communication on a matter of public concern." Lipsky , 460 S.W.3d at 584. Additionally, Status Lounge contends that applying the DMA's abatement period in a case subject to the TCPA would impose different deadlines for reputational claims as compared to other constitutional claims such as the right of association or *891 petition. According to Status Lounge, the TCPA was intended to be a comprehensive scheme for expedited dismissal, "not a law creating a patchwork of deadlines that vary from case to case depending on subject matter and on whether a defendant invokes some other dilatory procedure."
The DMA is not merely some dilatory procedure, however. The Legislature enacted the DMA in 2013 for the express purpose of "provid[ing] a method for a person who has been defamed by a publication or broadcast to mitigate any perceived damage or injury." Tex. Civ. Prac. & Rem. Code § 73.052. The DMA broadly applies "to a claim for relief, however characterized, from damages arising out of harm to personal reputation caused by the false content of a publication." Id. § 73.054(a). Nothing in the DMA or the TCPA indicates that the Legislature intended to exempt defamation claims that may be subject to the TCPA from compliance with the DMA, and such a construction would conflict with the Legislature's instructions that both the DMA and the TCPA are to be liberally construed. See id. §§ 27.011(b), 73.051.
We acknowledge that the application of the DMA in a defamation case subject to the TCPA would be unique to cases involving reputational claims as opposed to claims involving other constitutional rights, like the right to association or petition, but it is not for this court to second-guess the Legislature's intent in enacting the DMA to apply to defamation cases only. See McIntyre v. Ramirez , 109 S.W.3d 741, 748 (Tex. 2003) (stating that the court's role "is not to second-guess the policy choices that inform our statutes or to weigh the effectiveness of their results; rather, [the court's] task is to interpret those statutes in a manner that effectuates the Legislature's intent"). As we explain below, it is undisputed that this suit was abated under the DMA, and the Legislature has made clear that "all statutory and judicial deadlines"-which includes the deadline for filing a TCPA motion to dismiss-"will be stayed during the pendency of the abatement period." Tex. Civ. Prac. & Rem. Code § 73.062(d). Moreover, the Legislature specifically provided that such provisions would prevail over TCPA deadlines by instructing that the TCPA "does not abrogate or lessen any other defense, remedy, immunity, or privilege available under other constitutional, statutory, case, or common law or rule provisions." Tex. Civ. Prac. & Rem. Code § 27.011(a).
Status Lounge additionally claims that the defendants' motions to dismiss should be denied under principles of estoppel because they are taking inconsistent positions in this case, citing Atkinson Gas Co. v. Albrecht , 878 S.W.2d 236, 240 (Tex. App.-Corpus Christi 1994, writ denied) (stating that quasi estoppel forbids a party from accepting the benefits of a statute "and then subsequently taking an inconsistent position to avoid corresponding obligations or effects"). Status Lounge complains that invoking the DMA enables the defendants to receive and accept the benefit of a stay of deadlines, as well as the benefit of potentially avoiding the imposition of exemplary damages in the event of liability. See Tex. Civ. Prac. & Rem. Code §§ 73.055(b), 73.056(b), 73.059, 73.062(b). Status Lounge argues that the defendants should not be allowed to avoid the corresponding consequences of failing to timely file their TCPA motions to dismiss merely because the KHOU Parties chose to invoke the DMA. More fundamentally, Status Lounge urges, applying the two remedies would be inconsistent with the purposes of the DMA and TCPA, because a comment *892 cannot be defamatory requiring mitigation under the DMA, while simultaneously being meritless warranting dismissal under the TCPA.
The KHOU Parties respond that the purpose and intent of the TCPA and the DMA are not inconsistent and thus do not require a defendant to choose which remedy to invoke. Rather, the KHOU Parties posit, the way to fully effectuate the purpose and intent of the two statutory schemes is to allow the parties an opportunity to attempt to resolve the issues-or at least mitigate any perceived damages during the DMA abatement period-and then, should the discussions be unsuccessful, allow a defendant to timely file its TCPA motion within the remaining sixty-day window after the abatement ends. See In re Kimball Hill Homes Tex., Inc. , 969 S.W.2d 522, 527 (Tex. App.-Houston [14th Dist.] 1998, orig. proceeding) (granting mandamus for failure to abate pursuant to Residential Construction Liability Act, thereby depriving defendant of opportunity to engage in negotiations to resolve matter before undergoing expense of litigation); Am. Online, Inc. v. Williams , 958 S.W.2d 268, 272 (Tex. App.-Houston [14th Dist.] 1997, no pet.) (reversing as error class certification during abatement period under Texas Deceptive Trade Practices Act, which deprived defendants of opportunity to attempt to resolve claims). We agree with the KHOU Parties.
The purpose of the DMA is to promote the early resolution of defamation lawsuits by enabling a person to mitigate any perceived damages. See Tex. Civ. Prac. & Rem. Code § 73.052. The purpose of the TCPA is to encourage and safeguard certain constitutional rights, including the right to free speech, while at the same time protecting an individual's right to file meritorious lawsuits for demonstrable injury by providing a special procedure for the expedited dismissal of demonstrably meritless suits. See Tex. Civ. Prac. & Rem. Code § 27.002 ; Lipsky , 460 S.W.3d at 586. We conclude that the plain language and the expressly stated purposes of the DMA and the TCPA show that the Legislature intended the two statutory schemes to work in harmony to encourage the protection and promotion of the exercise of First Amendment rights, to limit the use of overburdened judicial resources, and, when possible, to facilitate the early resolution of disagreements over such speech.[9]
Under the DMA, a person may maintain an action for defamation only if: (1) the person has made a timely and sufficient request for a correction, clarification, or retraction from the defendant; or (2) the defendant has made a correction, clarification, or retraction. Tex. Civ. Prac. & Rem. Code § 73.055(a). It is undisputed that none of the defendants made a correction, clarification, or retraction to their articles; therefore, the burden was on Status Lounge to comply with section 73.055(a)'s requirement of a timely and sufficient request for a correction, clarification, or retraction. When the KHOU Parties filed their plea in abatement complaining that they had not received from Status Lounge a timely and sufficient written request, and Status Lounge failed to timely file a controverting affidavit before the eleventh day after the plea was filed, Status Lounge's *893 suit was automatically abated "in its entirety." See id. § 73.062(b). Because the case was abated in its entirety, the abatement applied to all parties, including the Chronicle Parties, even though the Chronicle Parties did not file their own plea in abatement. See id.
That the Legislature intended the DMA's abatement period to apply to the TCPA's sixty-day deadline to file a motion to dismiss is further confirmed by section 73.062(d), which specifically instructs that an abatement stays "[a]ll statutory and judicial deadlines under the Texas Rules of Civil Procedure" other than those provided in the DMA. See id. § 73.062(d). Although this provision is awkwardly phrased, we conclude from the context and the words used that the abatement stays not only all "judicial deadlines under the Texas Rules of Civil Procedure" but also all "statutory deadlines"-which would include the TCPA's sixty-day filing deadline. We reach this conclusion because the Texas Rules of Civil Procedure do not contain statutes, and therefore the reference to "statutory and judicial deadlines under the Rules of Civil Procedure" must mean both statutory deadlines and judicial deadlines under the Texas Rules of Civil Procedure. See Lippincott , 462 S.W.3d at 509 (explaining that a court presumes that the Legislature included each word in the statute for a purpose); see also Tex. Workers' Comp. Ins. Fund v. Del Indus., Inc. , 35 S.W.3d 591, 593 (Tex. 2000) ("[I]t is settled that every word in a statute is presumed to have been used for a purpose; and a cardinal rule of statutory construction is that each sentence, clause and word is to be give effect if reasonable and possible.") (alteration in original) (quotation omitted).
The Chronicle and the KHOU Parties were served with Status Lounge's suit on September 15, 2016; however, Langlois was served September 12, 2016. The parties agree that Status Lounge's suit was abated between October 14, 2016, and December 12, 2016. As a result, the entire case was stayed, including the deadline to file the motions to dismiss. See Tex. Civ. Prac. & Rem. Code § 73.062(b), (d). After the abatement period ended, the Chronicle Parties and the KHOU Parties filed their TCPA motions to dismiss on January 10, 2017, just within the TCPA's sixty-day deadline for filing a motion to dismiss. See id. § 27.003(b). Because the KHOU Parties' plea in abatement tolled the TCPA's filing deadline for motions to dismiss until the abatement period ended, and because the defendants timely filed their TCPA motions to dismiss, the trial court erred by denying the defendants' motions to dismiss as untimely. See id. ; Kimball Hill Homes , 969 S.W.2d at 527 ; Am. Online, Inc. , 958 S.W.2d at 272. We sustain the defendants' first issues and reverse the trial court's order denying their motions to dismiss as untimely.
REMAND OF THE DEFENDANTS' REMAINING ISSUES FOR THE TRIAL COURT'S CONSIDERATION
The defendants request that if we reverse the trial court's holding that their motions to dismiss were untimely, we also review and dismiss Status Lounge's lawsuit on the merits. Status Lounge responds that the trial court's ruling should be affirmed, but if it is reversed, the case should be remanded for a determination of the merits by the trial court. Status Lounge further argues that if this court decides to address the merits, the trial court's holding should be affirmed because the TCPA is unconstitutional or, alternatively, the defendants' motions to dismiss should be denied on the merits.
*894 The trial court sustained Status Lounge's objections to the defendants' TCPA motions to dismiss and denied the motions to dismiss "as untimely." Nevertheless, the KHOU Parties contend that because appellate courts review the merits of TCPA motions even in the absence of an express ruling and the review is de novo, this court can and should review the merits and render the judgment the trial court should have rendered. The KHOU Parties argue that at least two hearings were held in which the merits were discussed, and assert that judicial inefficiency will result if the trial court erroneously denies the motions to dismiss again, requiring yet another appeal.
The KHOU Parties are correct that if the trial court does not rule on a motion to dismiss within thirty days of the hearing on the motion, the motion to dismiss is considered to have been denied by operation of law and the moving party may pursue an appeal in which the appellate court reviews the merits de novo. See Tex. Civ. Prac. & Rem. Code § 27.008(a) ; Cox Media Grp. , 524 S.W.3d at 858-59. In this case, however, the trial court made a ruling, specifically determining that the defendants' motions were untimely. The trial court did not rule on the objections to evidence or purport to consider the merits of the motion. We conclude that in this circumstance, the appropriate course is to remand the case to the trial court to rule on the merits of the parties' arguments and make any related rulings that the court may deem necessary. See Tex. R. App. P. 47.1 ; cf. Cardwell v. Whataburger Rest. LLC , 484 S.W.3d 426, 428 (Tex. 2016) (per curiam) (holding that when court of appeals reverses trial court's stated basis for its ruling and on appeal the parties brief all issues raised below, including those rejected by the trial court, court of appeals must either address all arguments or remand the case to the trial court to address them).
Additionally, we conclude that we have no jurisdiction to address the trial court's ruling on Status Lounge's constitutional argument in this interlocutory appeal. Status Lounge not only argued that the TCPA was unconstitutional in its supplemental response to the defendants' motions to dismiss, it also filed a motion to declare the TCPA unconstitutional, which the trial court denied by a separate order signed April 5, 2017. "An appellate court lacks jurisdiction to review an interlocutory order unless a statute specifically authorizes an exception to the general rule, which is that appeals may only be taken from final judgments." Qwest Commc'ns Corp. v. AT&T Corp. , 24 S.W.3d 334, 336 (Tex. 2000) (per curiam). Because this court has jurisdiction only over the trial court's interlocutory order denying the defendants' motions to dismiss under the TCPA, see Tex. Civ. Prac. & Rem. Code § 51.014(a)(12), we cannot consider the order denying Status Lounge's motion to declare the TCPA unconstitutional on interlocutory appeal. Because Status Lounge's constitutional arguments are not germane to the timeliness issues involved in this appeal, we do not address these arguments in adjudicating this appeal. We therefore do not reach the parties' remaining issues addressing the merits.
CONCLUSION
We sustain the Chronicle Parties' and the KHOU Parties' first issues, reverse the trial court's order denying their motions to dismiss under the TCPA as untimely, and remand the case to the trial court for further proceedings consistent with this opinion.

The first appellant to be served with appellee's lawsuit was served September 12, 2016. The case was abated under the DMA between October 14, 2016, and December 12, 2016. Consequently, thirty-one days passed between the date of service and the start of the abatement period. Appellants filed their motions to dismiss on January 10, 2017, twenty-nine days after the abatement period ended. Taking into account time periods before and after the abatement period (thirty-one days plus twenty-nine days), appellants' motions to dismiss were filed exactly sixty days after the earliest date an appellant was served with appellee's lawsuit.

Photographs in the record are in black and white and of poor quality, but we will assume for purposes of appeal that the photographs depict the Status Lounge.

Status Lounge Incorporated is the holder of a Texas Alcoholic Beverage Commission license for the bar at 3710 Dowling Street. Public records attached to the defendants' motions to dismiss show that at the time of the incident, "Status Lounge & Café" was the registered d/b/a name of a business named "Strong Arm Entertainment Incorporated" located at 3710 Dowling Street. Shortly after this lawsuit was filed, "Status Lounge & Cigar Bar" was registered as a d/b/a name of a business named Murray Financial Companies, Inc. at the same address. The defendants dispute that Status Lounge is the proper plaintiff or the allegedly defamed bar.

William Langlois's last name is spelled "Langois" in Status Lounge's petition and in the judgment; however, the record and defense counsel's briefing reflects that the correct spelling is "Langlois."

Dale Lezon is now deceased, and appellant Stephen Lezon, as Administrator of the Estate of Dale Lezon, was substituted as a defendant by the trial court.

The Media Defendants would later assert that the shooting victim was not James Oneal, as Status Lounge claimed, pointing to evidence that the police report named Jessie Leon Bryant as the victim, and that Bryant had confirmed that he was the victim of the shooting in social media posts.

Section 73.55 provides that a request for a correction, clarification, or retraction is timely "if made during the period of limitation for commencement of an action for defamation." Tex. Civ. Prac. & Rem. Code § 73.055(b). The request is sufficient if it:
(1) is served on the publisher;
(2) is made in writing, reasonably identifies the person making the request, and is signed by the individual claiming to have been defamed or by the person's authorized attorney or agent;
(3) states with particularity the statement alleged to be false and defamatory and, to the extent known, the time and place of publication;
(4) alleges the defamatory meaning of the statement; and
(5) specifies the circumstances causing a defamatory meaning of the statement if it arises from something other than the express language of the publication.
Id. § 73.055(d).

Status Lounge also looks to the Code Construction Act to argue that section 27.003(b)'s requirement that a movant "must" file a motion to dismiss by the specified deadline "creates or recognizes a condition precedent" to a dismissal under the statute and to this appeal. See Tex. Gov't Code §§ 311.011, 0311.016(3). Consequently, Status Lounge asserts, the defendants' failure to satisfy this condition precedent deprives this court of jurisdiction to hear this appeal. As we explain below, however, we conclude that the defendants' motions to dismiss were timely filed; therefore, we need not address Status Lounge's argument.

Alternatively, Status Lounge suggests that the TCPA and the DMA can be harmonized simply by requiring a defendant to move for dismissal before invoking the DMA's abatement provision. As noted above, under the plain meaning of both statutes, the Legislature has not imposed any such requirement.