**Affirmed in part, Reversed and Remanded in part, and Memorandum Opinion filed June 26, 2018.**



In the

# Fourteenth Court of Appeals

_____

## NO. 14-17-00678-CV

_____

### ANNA ABATECOLA, ROBERT ABATECOLA, HI-TECH CONCRETE PUMPING SERVICES PCD, LLC AND ABATECOLA LEASING, Appellants

v.

### 2 SAVAGES CONCRETE PUMPING, LLC AND JOSEPH LOWRY, INDIVIDUALLY, Appellees

**On Appeal from the 212th District Court
Galveston County, Texas
Trial Court Cause No. 17-CV-0186**

## M E M O R A N D U M   O P I N I O N

This is an interlocutory appeal from the trial court's order denying a motion to dismiss based on the Texas Citizens' Participation Act ("TCPA"). Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001–.011 (West 2017). We affirm the trial court's denial of the motion to dismiss with regard to tortious interference claims based on

continued employment and interference with customers. We conclude the trial court erred by denying the motion to dismiss 2 Savages' tortious interference claim based on hiring, by denying the motion to dismiss as moot with regard to nonsuited claims, and by ordering an award of attorney's fees and costs.

## I. BACKGROUND[1]

Joseph Lowry and Chad MacDonald created a concrete pumping company known as 2 Savages Concrete Pumping LLC ("2 Savages") in August 2016. In October 2016, MacDonald entered into a Company Agreement with Lowry which contained non-competition, non-solicitation, and non-disclosure provisions. 2 Savages and Lowry broadly refer to these restrictive covenants collectively as "the Non-Compete Contract" or "the Non-Compete Agreement."

In early February 2017, the business relationship between Lowry and MacDonald "unraveled," and on February 14, 2017, Lowry and 2 Savages filed suit against MacDonald. In the original petition, Lowry and 2 Savages asserted claims against MacDonald for breach of fiduciary duty, breach of contract, libel, theft, and negligent misrepresentation.

On March 13, 2017, Hi-Tech Concrete Pumping Services PCD, LLC ("Hi-Tech") hired Chad MacDonald as a pump operator. Soon thereafter, Lowry noticed that "several of 2 Savages usual customers began having their jobs handled by Hi-Tech." 2 Savages and Lowry amended their petition to include tortious interference causes of action against Hi-Tech; its owners, Anna and Robert Abatecola; and Abatecola Leasing, an entity that buys equipment and leases it to Hi-Tech

---

[1] In determining whether a lawsuit should be dismissed under the TCPA, "the court shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a). The factual background stated herein is based on the pleadings, as well as supporting and opposing affidavits.

(collectively, "the Hi-Tech Parties"). 2 Savages and Lowry asserted the Hi-Tech Parties tortiously interfered with the restrictive covenants in the Company Agreement and 2 Savages' agreements with its customers. The allegations against the Hi-Tech Parties were limited to four paragraphs. After referencing and quoting some of the restrictive covenants, the first amended petition stated:

> On or about March 14, 2017, the undersigned sent a Cease and Desist letter to Defendant, Hi-Tech Concrete Pumping Company, Inc. advising them of the "Non-Compete" contract between Plaintiffs and Defendant, Chad MacDonald. [The Hi-Tech Parties] were warned about their interference with Plaintiffs [sic] customers and contracts and that they were encouraging, abetting and enabling the violation of the Non-Compete Agreement.

> Upon information and belief, [the Hi-Tech Parties] hired Defendant, Chad MacDonald to work for them after being informed of the Non-Compete Agreement they continued to employ Chad MacDonald in violation of the Agreement and to enrich themselves. In doing so, [the Hi-Tech Parties] interfered with 2 Savages [sic] contractual agreement with Chad MacDonald (i.e. Non-Compete contract) and interfered with 2 Savages [sic] contractual agreement with its customers.

> Specifically, [the Hi-Tech Parties] have conspired with Defendant Chad MacDonald to violate and interfere with the Non-Compete Contract between himself and 2 Savages. As a result, Plaintiffs have lost business income and will continue to lose business income until the Court orders all Defendants to cease from such activity.

The Hi-Tech Parties filed a motion to dismiss the claims against them under the TCPA. The motion asserted that the TCPA applied to the tortious interference claims because the claims were based on, related to, or were in response to the Hi-Tech Parties' exercise of their right to association and right to free speech. The motion argued that 2 Savages and Lowry could not meet their burden under the TCPA, and therefore, the tortious interference claims should be dismissed with prejudice, and the Hi-Tech Parties should recover attorney's fees, court costs, and expenses. The affidavit of Robert Abatecola was attached in support of the motion.

3

In his affidavit, Robert described Hi-Tech as a "family owned concrete pumping company," "one of the largest concrete pumping services in the greater Houston area," and a competitor of 2 Savages. With regard to Chad MacDonald, Robert admitted, "We communicated with MacDonald as a potential employee and as an employee in furtherance of Hi-Tech's concrete pumping business." With regard to customers, Robert admitted, "We communicated with customers on jobs that MacDonald worked in furtherance of Hi-Tech's services of providing concrete pumping and pumping operators." Robert also pointed out, "MacDonald resigned two-weeks [after his hire] on March 29, 2017."

On July 3, 2017, 2 Savages and Lowry amended their petition a second time,[2] removing the Abatecolas and Abatecola Leasing as defendants. In addition to removing these defendants, the second amended petition slightly clarified the middle paragraph of the tortious interference allegations quoted above:

> Upon information and belief, Defendant Hi-Tech hired Defendant MacDonald to work for it and—after being informed of the Non-Compete Agreement—they continued to employ Chad MacDonald in violation of the Agreement and to enrich themselves. In doing so, Defendant Hi-Tech has interfered with 2 Savages [sic] contractual agreement with its customers.

On the same day, 2 Savages and Lowry filed a nonsuit, dismissing their claims against the Abatecolas and Abatecola Leasing without prejudice. Also on the same day, 2 Savages and Lowry filed their response to the Hi-Tech Parties' motion to dismiss. As the claims against the Abatecolas and Abatecola Leasing had been nonsuited, the response only asked the trial court to deny Hi-Tech's motion to dismiss.

---

[2] 2 Savages and Lowry later filed a supplemental petition attaching the Company Agreement, which 2 Savages also included as an exhibit to its response to the motion to dismiss.

The response argued that the TCPA did not apply to proprietary information, trade secrets, non-compete agreements, or commercial activity. The response alternatively argued that 2 Savages and Lowry could meet their burden under the TCPA. The response requested recovery of attorney's fees and costs. Joseph Lowry's affidavit was attached in support of the response.

In his affidavit, Lowry identified Hi-Tech as a "direct competitor of 2 Savages." Lowry asserted that even after he had informed the Abatecolas and Hi-Tech of MacDonald's restrictive covenants, Hi-Tech continued to employ MacDonald, "steal" 2 Savages' customers, use 2 Savages' proprietary data against it, and "attack" 2 Savages' business. Lowry described 2 Savages' business losses:

> Immediately after Chad MacDonald was hired [by Hi-Tech], I noticed that several of 2 Savages [sic] usual customers began having their jobs handled by Hi-Tech after Chad MacDonald went over there. Customers (and job values) that I believe were now having their concrete poured by Hi-Tech were: KWM Houston ($2,000.00), Lamson Construction ($1,800.00), Merryland Houston ($2,500.000 [sic] and Olivan Construction ($11,500.00). I personally spoke with the franchise owner of the Galveston Double Tree Hospitality Hotel who informed me that Hi-Tech poured their concrete job, which I had valued at $5,000.00.

> 2 Savages lost tens of thousands of dollars in jobs over the next few weeks. Those customers have not returned and may never return. 2 Savages has been severely damaged by Hi-Tech's interference with the valid, binding Agreement.

> . . .

> The effect of Hi-Tech's misappropriation of 2 Savages' data was so immediate and strong that I knew about Chad MacDonald's hiring and damage to the business, literally, within 24 hours.

Lowry also averred in his affidavit that Hi-Tech tortiously interfered by using its relationship with MacDonald to approach and hire away other 2 Savages personnel in violation of MacDonald's restrictive covenants. Further, while

5

MacDonald was employed by Hi-Tech, "it had him going online and attacking my business, approaching my customers, disparaging my business." Lowry contends, "Hi-Tech pumped [MacDonald] for confidential proprietary information about my customers, pricing, and jobs" and "[e]ven though Hi-Tech has terminated Chad MacDonald, it is still damaging 2 Savages' business by using the proprietary information it stole."

On July 5, 2017, Lowry filed a nonsuit on his claims against Hi-Tech. The only remaining claims asserted against the Hi-Tech Parties in the second amended petition were 2 Savages' tortious interference claims against Hi-Tech.

On July 6, 2017, the Hi-Tech Parties filed a reply in support of their motion to dismiss. The Hi-Tech Parties argued that the nonsuited parties maintained a right to recover attorney's fees and a dismissal with prejudice pursuant to the TCPA.

On July 7, 2017, the trial court signed two orders nonsuiting, without prejudice, the claims asserted against the Abatecolas and Abatecola Leasing, as well as Lowry's claim against Hi-Tech.

After some additional briefing and hearings, the trial court signed an order denying the Hi-Tech Parties' motion to dismiss on August 4, 2017. In the order, the court found that the Abatecolas and Abatecola Leasing "have been non-suited and dismissed without prejudice from this case, and that Defendant [Hi-Tech] is the sole moving defendant in this motion to dismiss under the Texas Citizens Participation Act." Consequently, the court only ruled on the merits of the motion to dismiss as it pertained to claims against Hi-Tech. In support of its denial, the court made the following findings:

> The Court . . . finds Plaintiff sued Defendant Chad MacDonald for violating, and Defendant [Hi-Tech] for tortuously [sic] interfering with,

a written Non-Disclosure, Trade Secrets, and Non-Competition Agreement.

The Court further finds that the allegations in Plaintiff's live pleadings are for contractual protection of proprietary information and trade secrets, and are therefore not subject to TCPA application.

The Court further finds that the Non-Disclosure, Trade Secrets, and Non-Competition Agreement sued upon by Plaintiffs herein is not subject to TCPA application.

The Court further finds that the [TCPA] does not apply to commercial activity, as described in Tex. Civ. Prac. & Rem. Code § 27.010(b), which states it does not apply to: "a legal action brought against a person primarily engaged in the business of selling . . . goods or services, if the statement or conduct arises out of the sale of goods or services, . . . or a commercial transaction in which the intended audience is an actual or potential buyer of customer."

The Court further finds that the Defendant, [Hi-Tech], knew or should have known of the exclusion under the TCPA (described herein), and awards attorney fees, expenses and court costs to Plaintiffs for their defense of this motion.

Plaintiffs are ORDERED to submit evidence of reasonable attorney fees, expenses and court costs by affidavit within _____ days from the date of this order.

After 2 Savages and Lowry's attorney submitted an affidavit and request for attorney's fees, the Hi-Tech Parties objected to the request for attorney's fees, arguing, among other things, that there had been no finding that the motion to dismiss had been frivolous or solely intended for delay. This interlocutory appeal followed.

## II.     ANALYSIS

The Hi-Tech Parties bring five issues on appeal. They assert the trial court erred by: (1) finding that the TCPA did not apply; (2) denying the motion to dismiss "on the basis that [2 Savages] met [its] burden to prove that the commercial speech exemption applied"; (3) holding Hi-Tech liable for attorney's fees and costs based

7

on an incorrect standard; (4) denying the motion to dismiss because 2 Savages did not prove a prima facie case of the elements of its claims, as required by the TCPA; and (5) denying, by operation of law, the motion to dismiss as it applied to nonsuited claims.

## A. TCPA Framework and Standard of Review

The TCPA, codified in chapter 27 of the Civil Practice and Remedies Code, protects citizens from retaliatory lawsuits that seek to silence or intimidate them on matters of public concern. *In re Lipsky*, 460 S.W.3d 579, 586 (Tex. 2015) (orig. proceeding); *see generally* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001–.011. The statute is an anti-SLAPP law, with "SLAPP" being the acronym for "Strategic Lawsuits Against Public Participation." *See Fawcett v. Grosu*, 498 S.W.3d 650, 654 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). The purpose of the statute is to identify and summarily dispose of lawsuits designed only to chill First Amendment rights, not to dismiss meritorious lawsuits. *In re Lipsky*, 460 S.W.3d at 589; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 27.002. However, the TCPA is broadly worded, and as a result, it has been very broadly applied.

> Texas courts' brief history of applying the broadly worded TCPA has not limited application of the Act's protections to weighty issues of great public concern. The dismissal mechanism of the statute has been applied in cases for fraud and barratry, a suit for contamination of a water well, a dispute between neighbors over a fence, defamation claims arising from an employment dispute, a snarl of competing claims arising from discussions among horse breeders on social media, and a host of other types of claims.

*Long Canyon Phase II & III Homeowners Assoc., Inc. v. Cashion*, 517 S.W.3d 212, 216–17 (Tex. App.—Austin 2017, no pet.) (citations omitted).

The TCPA provides a two-step process to expedite the dismissal of a "legal action" that is "based on, relates to, or is in response to a party's exercise of the right

8

of free speech, right to petition, or right of association." Tex. Civ. Prac. & Rem. Code Ann. § 27.003(a). First, the movant seeking dismissal under the TCPA must "show[ ] by a preponderance of the evidence that the [nonmovant's] legal action is based on, relates to, or is in response to the [movant]'s exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association." *Id.* § 27.005(b). Second, if the movant makes that showing, the burden shifts to the nonmovant to "establish[ ] by clear and specific evidence a prima facie case for each essential element of the claim in question" to avoid dismissal.[3] *Id.* § 27.005(c).

The TCPA exempts certain types of legal actions from its application. *See id.* § 27.010. In this case, the only pertinent exemption is the "commercial speech" exemption found in section 27.010(b). Section 27.010(b) provides:

> This chapter does not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer.

*Id*. The nonmovant bears the burden of proving the statutory exemption. *Deaver v. Desai*, 483 S.W.3d 668, 673 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

The "evidence" the trial court "shall consider" in "determining whether a legal action should be dismissed" under the TCPA expressly includes "the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a). "The TCPA contemplates primary reliance on such proof." *Lona Hills Ranch, LLC v. Creative Oil & Gas Operating, LLC*, —S.W.3d—, No. 03-17-00743-CV, 2018 WL 1868054, at *3 (Tex.

---

[3] If the nonmovant meets that burden and the "legal action" would otherwise survive, the TCPA still allows the movant to obtain dismissal by "establish[ing] by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." *Id.* § 27.005(d).

9

App.—Austin Apr. 19, 2018, no pet.) (citing Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a) and *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017) ("The basis of a legal action is not determined by the defendant's admissions or denials but by the plaintiff's allegations . . . . When it is clear from the plaintiff's pleadings that the action is covered by the Act, the defendant need show no more.") (internal footnotes omitted)).

We review de novo whether claims are covered by the TCPA. *Deaver*, 483 S.W.3d at 672. We also review de novo issues of statutory construction. *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 899 (Tex. 2017) (per curiam).

## B.    Application of the TCPA

In their first issue, the Hi-Tech Parties contend the trial court erred by "impliedly finding that the TCPA did not apply . . . and . . . expressly finding that the TCPA did not apply to 'contractual protection of proprietary information and trade secrets' or the 'Non-Disclosures, Trade Secrets, and Non-Competition Agreement.'" Because the trial court only ruled on the merits of the motion to dismiss as it pertained to claims against Hi-Tech, and because Lowry nonsuited his claims, we limit our analysis to the tortious inference claims asserted by 2 Savages against Hi-Tech.[4]

Hi-Tech initially takes issue with the following findings of the trial court:

The Court further finds that the allegations in Plaintiff's live pleadings are for contractual protection of proprietary information and trade secrets, and are therefore not subject to TCPA application.

The Court further finds that the Non-Disclosure, Trade Secrets, and

---

[4] We address the Hi-Tech Parties' arguments concerning the claims against the Abatecolas and Abatecola Leasing and the claims by Lowry below in our analysis of the Hi-Tech Parties' fifth issue.

Non-Competition sued upon by Plaintiffs herein is not subject to TCPA application.

As Hi-Tech correctly points out, there is no exemption to the TCPA that entirely exempts such subject matter. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.010. TCPA exemptions are limited to (1) enforcement actions brought "in the name of this state or a political subdivision . . . by the attorney general, a district attorney, a criminal district attorney, or a county attorney"; (2) the commercial speech exemption, which we discuss in detail below; (3) legal actions "seeking recovery for bodily injury, wrongful death, or survival" and to statements made regarding such actions; and (4) legal actions brought under the Insurance Code or arising out of an insurance contract. *See id.* There are no exemptions for legal actions involving "contractual protection of proprietary information and trade secrets" or "Non-Disclosure, Trade Secrets, and[/or] Non-Competition" agreements. As such, the trial court's findings in this regard were erroneous and do not support the complete denial of Hi-Tech's motion to dismiss.

Hi-Tech contends the TCPA applies to 2 Savages' claims against Hi-Tech because the allegations of 2 Savages "implicated the right of association and the right of free speech." Hi-Tech specifically addresses two theories upon which 2 Savages' tortious interference claims are based: the hiring of MacDonald and interference with 2 Savages' customers. Hi-Tech does not argue on appeal that the right of association or the right of free speech is implicated insofar as the claims are based on continued employment of MacDonald.[5]

---

[5] The TCPA defines "'legal action' . . . both expansively and variously . . . referring to everything from an entire action or proceeding to particular facts that underlie a claim or cause of action. This nomenclature contemplates the drawing of distinctions not only between claims, but also between factual theories, as here." *Serafine v. Blunt*, 466 S.W.3d 352, 393 (Tex. App.—Austin 2015, no pet.) (citing Tex. Civ. Prac. & Rem. Code Ann. § 27.001(6) and *Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 563–71 (Tex. 2014) (plurality op.)).

The TCPA defines both the right of free speech and the right of association as involving communications. *Id.* § 27.001(2)–(3). "Exercise of the right of association" is "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." *Id.* § 27.001(2). "Exercise of the right to free speech" is "a communication made in connection with a matter of public concern." *Id.* § 27.001(3). A "'[m]atter of public concern' includes an issue related to: (A) health or safety; (B) environmental, economic, or community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product, or service in the marketplace." *Id.* § 27.001(7). "The TCPA does not require that the statements specifically 'mention'" any of the listed matters of public concern, "nor does it require more than a 'tangential relationship'" to same; rather, the TCPA applies so long as the defendant's statements are "in connection with" "issue[s] related to" any of the matters of public concern listed in the statute. *Coleman*, 512 S.W.3d at 900 (citing Tex. Civ. Prac. & Rem. Code § 27.001(3), (7)). The TCPA also broadly defines "communication" as "includ[ing] the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." Tex. Civ. Prac. & Rem. Code Ann. § 27.001(1).

Hi-Tech contends the hiring of MacDonald involved communications exercising the right of association because the hiring involved communication which

In its opening appellate brief, Hi-Tech addresses the theory of tortious interference based on continued employment in its argument that 2 Savages failed to show a prima facie case, but Hi Tech does not address the application of the TCPA or the commercial exemption to this theory of tortious interference. In addressing the commercial exemption, for example, Hi-Tech contends that, other than hiring MacDonald, "the only other basis for tortious interference[] Appellants [sic] alleged in their pleadings [was] that Hi-Tech interfered with alleged contracts with 2 Savages's customers." In the reply brief, Hi-Tech again acknowledges the theory of tortious interference based on continued employment, but again, does not explain how this theory is covered by the TCPA. Even if Hi-Tech had argued in reply that this theory was covered by the TCPA, arguments raised for the first time in a reply brief are waived. *QTAT BPO Sols., Inc. v. Lee & Murphy Law Firm, G.P.*, 524 S.W.3d 770, 779 (Tex. App.—Houston [14th Dist.] 2017, pet. filed).

created an employment relationship for the "common pursuit of engaging in the same business." Although 2 Savages' pleadings do not specifically reference any communications, Hi-Tech asserts, "in order for [Hi-Tech] to hire MacDonald," there was a communication. Hi-Tech also relies on the affidavit of Robert Abatecola submitted in support of the motion to dismiss, in which Robert stated, "We communicated with MacDonald as a potential employee and as an employee in furtherance of Hi-Tech's concrete pumping business."

Hi-Tech likewise contends the alleged interference with customers involved communications exercising the right of free speech because such interference would have involved communications made in connection with a matter of public concern. Again, the pleadings of 2 Savages do not specifically reference any communications, and again, Hi-Tech relies on the affidavit of Robert Abatecola. In this regard, Robert stated, "We communicated with customers on jobs that MacDonald worked in furtherance of Hi-Tech's services of providing concrete pumping and pumping operators."

2 Savages argues Hi-Tech failed to meet its initial burden to show TCPA coverage, but its arguments do not account for the broad language of the TCPA or the precedent of the Texas Supreme Court. 2 Savages asserts the TCPA does not apply for various reasons: Hi-Tech failed to establish a "nexus" between "the lawsuit and any of [its] rights of free speech and association"; "Appellants had no constitutional right to participate in a violation of the Non-Compete"; private communications are not protected by the TCPA; and "the activity Appellants sought to protect via the TCPA Motion to Dismiss, had been contracted away pursuant to" section 15.50 of the Texas Business and Commerce Code.[6]

---

[6] 2 Savages also argues the TCPA's commercial speech exemption applies to the claims at issue. We address this argument below in our analysis of the Hi-Tech Parties' second issue.

In *ExxonMobil Pipeline Co. v. Coleman*, the Supreme Court of Texas rejected similar arguments, calling the arguments "an effort to narrow the scope of the TCPA by reading language into the statute that is not there." 512 S.W.3d at 901. The Court explained, "We do not substitute the words of a statute in order to give effect to what we believe a statute should say; instead, absent an ambiguity, we look to the statute's plain language to give effect to the Legislature's intent as expressed through the statutory text." *Id.* We must follow the Supreme Court precedent and apply the TCPA as written.

Consequently, we focus on whether the claims of 2 Savages are based on, relate to, or are in response to the exercise of the right of free speech or right of association, as these rights are defined under the TCPA. Tex. Civ. Prac. & Rem. Code Ann. § 27.003(a). It is clear from the pleadings that the claims are *related to* the exercise of the right of association and the right to free speech. As Hi-Tech has pointed out, hiring MacDonald and interfering with customers would necessarily have required communications or "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1). Hi-Tech could not have hired MacDonald or interfered with customers, as alleged, without communicating with MacDonald and the customers in some way.

In addition, with respect to MacDonald's hiring, this communication was made by individuals who "join[ed] together to collectively express, promote, pursue, or defend common interests," the common interests being the business of Hi-Tech, or as 2 Savages alleged, Hi-Tech "conspired with Defendant Chad MacDonald to violate and interfere with the Non-Compete Contract between himself and 2 Savages." *See id.* § 27.001(2). With respect to the alleged interference with customers, the communication was "made in connection with a matter of public

14

concern" because the communications with customers would have had been made in connection with one of the listed matters of public concern—a "good, product, or service in the marketplace." *Id.* § 27.001(7)(E).

2 Savages argues that "Robert's affidavit is the only evidence relied upon to show application of the TCPA, and the assertions therein were conclusory." We disagree. The relevant statements in Robert's affidavit are not conclusory: Neither the statement, "We communicated with MacDonald as a potential employee and as an employee in furtherance of Hi-Tech's concrete pumping business," nor the statement, "We communicated with customers on jobs that MacDonald worked in furtherance of Hi-Tech's services of providing concrete pumping and pumping operators," makes a judgment or determination without supporting facts or reasoning.

Moreover, while Robert's affidavit does bolster our conclusion that the TCPA applies, it is not the "only evidence" that shows application of the TCPA. When determining the application of the TCPA, courts consider pleadings as "evidence," as we have above. *Id.* § 27.006(a); *Hersh*, 526 S.W.3d at 467 ("When it is clear from the plaintiff's pleadings that the action is covered by the Act, the defendant need not show more."). Because it is clear from the pleadings that the claims against Hi-Tech are covered by the TCPA, we need not rely on Robert's affidavit. Even assuming the claims of 2 Savages and Lowry are not based on or in response to communications, the claims are at least *related to* communications "between individuals who join together to collectively express, promote, pursue, or defend common interests" or communications "made in connection with a matter of public concern," which under the TCPA constitute, respectively, the "[e]xercise of the right of association" and the "[e]xercise of the right of free speech." Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001(2), (3), 27.003(a).

15

We conclude the tortious interference claims 2 Savages asserted against Hi-Tech for hiring MacDonald and interfering with customers relate to the exercise of the right to free speech and the right of association, as broadly defined by the TCPA and interpreted by the Texas Supreme Court. *See, e.g.*, *Coleman*, 512 S.W.3d at 901. Therefore, we sustain the Hi-Tech Parties' first issue with regard to these claims. Because Hi-Tech does not argue that claims based on the continued employment of MacDonald are based on, relate to, or are in response to the exercise of the right of free speech or right of association, we overrule the Hi-Tech Parties' first issue insofar as it applies to these claims.

## C.    Application of the Commercial Speech Exemption

With regard to the commercial speech exemption, Hi-Tech argues that 2 Savages failed to show that the commercial speech exemption applied to claims against Hi-Tech under the *Simpson* test[7] or "the more narrow application used by a minority of courts." 2 Savages responds that, regardless of the test applied, its claims fall within the commercial speech exemption.

Previously, there was a split among the Texas courts of appeals as to how the commercial speech exemption should be interpreted. The Texas Supreme Court recently resolved the split. In *Castleman v. Internet Money Ltd.*, the Court construed the exemption to apply when:

> (1) the defendant was primarily engaged in the business of selling or leasing goods [or services],
>
> (2) the defendant made the statement or engaged in the conduct on which the claim is based in the defendant's capacity as a seller or lessor of those goods or services,
>
> (3) the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the defendant

---

[7] *Simpson Strong-Tie Co., Inc. v. Gore*, 230 P.3d 1117 (Cal. 2010).

provides, and

(4) the intended audience of the statement or conduct were actual or potential customers of the defendant for the kind of goods or services the defendant provides.

—S.W.3d—, No. 17-0437, 2018 WL 1975039, at *3 (Tex. Apr. 27, 2018) (per curiam).

Applying this test to the claims at issue, we conclude that the commercial exemption does apply to 2 Savages' tortious interference claims based upon interference with customers but does not apply to 2 Savages' tortious interference claim based upon MacDonald's hiring.

Evidence establishes Hi-Tech is "a person primarily engaged in the business of selling or leasing . . . services." The affidavit of Hi-Tech owner Robert Abatecola shows that Hi-Tech is in the business of selling concrete pumping services. Therein, Robert described Hi-Tech as a "family owned concrete pumping company" and a competitor of 2 Savages. The affidavit of Lowry likewise identified Hi-Tech as a competitor of 2 Savages. Hi-Tech, citing *Backes v. Misko*, 486 S.W.3d 7, 22 (Tex. App.—Dallas 2015, pet. denied), argues that the evidence does not show Hi-Tech is *primarily engaged* in business. However, the evidence in *Backes* did not resemble the evidence in this case. *Backes* involved individuals in the quarter horse breeding business, and in that case, evidence existed that at least one of them had a full-time job raising money for charity. *Id.* Quarter Horse Breeding came "second." *Id.* By contrast, Robert identified Hi-Tech as "one of the largest concrete pumping services in the greater Houston area." There is no question Hi-Tech is primarily engaged in the business of selling or leasing services.

With respect to the hiring of MacDonald, 2 Savages did not show that the statements made, or conduct engaged in, by Hi-Tech "arose out of a commercial transaction involving the kind of goods or services" Hi-Tech provides.

17

MacDonald's hiring by Hi-Tech was not a sale of concrete pumping services. Nor did 2 Savages show that the audience for the statements or conduct "were actual or potential customers" of Hi-Tech. There was no showing that actual or potential customers were part of the communications between MacDonald and Hi-Tech about his hiring. Accordingly, 2 Savages failed to show the exception applied to the hiring of MacDonald.

With respect to communications with customers, however, the evidence does show that the statements made by Hi-Tech "arose out of a commercial transaction involving the kind of goods or services" Hi-Tech provides. It also shows that Hi-Tech made these statements in its capacity "as a seller or lessor of those goods or services," and "the intended audience . . . [was] actual or potential customers" of Hi-Tech for the kind of goods or services Hi-Tech provides. The pleadings and affidavits demonstrate that Hi-Tech's alleged communications with customers took place so that Hi-Tech could sell concrete pumping services for compensation. 2 Savages complained in its pleadings that Hi-Tech interfered with its customers in alleged violation of MacDonald's restrictive covenants in order to sell services that 2 Savages would have otherwise provided. Lowry testified in his affidavit that 2 Savages lost several customers to Hi-Tech after MacDonald went to work there, and as a result of Hi-Tech's conduct, 2 Savages lost "tens of thousands of dollars in jobs" to Hi-Tech. This portion of Lowry's affidavit is unrebutted. Hi-Tech's owner admitted "we communicated with customers on jobs that MacDonald worked in furtherance of Hi-Tech's services of providing concrete pumping and pumping operators." This evidence shows that Hi-Tech's alleged interference with customers is covered by the commercial exemption as defined in *Castleman*.

Hi-Tech argues that "communicat[ions] with customers on jobs that MacDonald worked in furtherance of Hi-Tech's services of providing concrete

pumping and pumping operators" did not arise out of the sale of goods or services. Hi-Tech admits that these communications were with "2 Savages's customers who were presumably Hi-Tech's actual or potential customers" but argues that if its communications did not attempt to "effectuate a sale for Hi-Tech, the exemption would not apply." Hi-Tech argues that neither the pleadings nor Lowry's affidavit reference any specific statement. With respect to conduct, Hi-Tech argues that the pleadings and Lowry's affidavit are vague and the conduct allegations in Lowry's affidavit "are legally incompetent since they are not based on Lowry's personal knowledge." Hi-Tech concludes that 2 Savages presented "no competent evidence, let alone clear and specific evidence, that [its] claims arose from conduct, involving the sale of goods or services, that Hi-Tech actually had with its customers."

Hi-Tech mistakenly merges the requirements that apply once it is shown that the TCPA applies with the issue of whether the claims at issue are subject to the requirements of the TCPA in the first place. The TCPA does not make application of the commercial speech exemption contingent on a showing of "clear and specific evidence." *See Cavin v. Abbott*, 545 S.W.3d 47, 57–58 (Tex. App.—Austin 2017, no pet.). There is no requirement that 2 Savages present clear and specific evidence to show the commercial exemption applies.

Although 2 Savages had the burden to prove that the commercial speech exemption applies, *see Deaver*, 483 S.W.3d at 673, the exemption's text does not state a requisite standard of proof. This silence contrasts with specific evidentiary standards applicable to the movant (preponderance of the evidence) or nonmovant (clear and specific prima facie evidence) in section 27.005's burden-shifting mechanism. We have located no Texas decision establishing the standard of proof

19

applicable to chapter 27's exemptions so we endeavor to identify it.[8]

The applicable evidentiary standard is generally determined by the nature of the case or particular claim. *In re Lipsky*, 460 S.W.3d at 589. The present matter involves civil litigation, in which the traditional preponderance of the evidence standard typically applies. *Id*.; *see State v. Benavidez*, 365 S.W.2d 638, 640 (Tex. 1963); *Carter v. Harris Cty. Appraisal Dist*., 409 S.W.3d 26, 36 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (stating general rule in civil cases that burden of proof is preponderance of evidence). No party argues differently and we think applying a preponderance of the evidence standard to section 27.010's exemptions best comports with the act's overall statutory scheme and legislative purpose, which advances the dual goals of encouraging and safeguarding the enumerated constitutional rights and respecting meritorious lawsuits for demonstrable injury. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.002. Establishing the statute's applicability requires a showing by a preponderance of the evidence; establishing one of the enumerated exemptions should demand the same burden.

Accordingly, we conclude that establishing the applicability of the commercial speech exemption required 2 Savages to prove it by a preponderance of the evidence. The "evidence" the trial court "shall consider" expressly includes "the pleadings and supporting and opposing affidavits stating the facts on which the liability . . . is based." *Id.* § 27.006(a). "The basis of a legal action is . . . [determined by] the plaintiff's allegations." *Hersh*, 526 S.W.3d at 467.

2 Savages alleged that Hi-Tech interfered with 2 Savages' customers and 2 Savages lost business income as a result. Hi-Tech's admissions that it

---

[8] *See Herman & MacLean v. Huddleston*, 459 U.S. 375, 389 (1983) ("Where Congress has not prescribed the appropriate standard of proof and the Constitution does not dictate a particular standard, we must prescribe one.").

communicated with "2 Savages's customers who were presumably Hi-Tech's actual or potential customers" "in furtherance of Hi-Tech's services of providing concrete pumping and pumping operators" along with the allegations in Lowry's affidavit regarding the jobs 2 Savages lost to Hi-Tech sufficiently show by a preponderance of the evidence that Hi-Tech's statements or conduct "arose out of a commercial transaction involving the kind of goods or services the defendant provides." We conclude the TCPA's commercial-speech exemption applies. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.010(b). Therefore, the TCPA does not apply to the claims based upon interference with customers. *See id.*

Without expressing any opinion on the merits of the claims, we conclude that 2 Savages has shown that 2 Savages' tortious interference claims against Hi-Tech based upon interference with customers are exempted from application of the TCPA. The trial court did not err in denying the motion to dismiss as to these claims against Hi-Tech. We overrule the Hi-Tech Parties' second issue with regard to these claims.[9]

For the reasons stated above, we sustain the Hi-Tech Parties' second issue with regard to 2 Savages' tortious interference claim based on the hiring of MacDonald.

**D.    Prima Facie Case**

In their fourth issue, the Hi-Tech Parties argue that 2 Savages failed to show "'by clear and specific evidence a prima face case for each essential element of the[ir] claims for tortious interference." We address this argument's application to the claim we held was covered by the TCPA and not exempted—2 Savages' claim

---

[9] Because we conclude these claims against Hi-Tech are exempted from the TCPA, we do not address these claims in our evaluation of the Hi-Tech Parties' fourth issue. *See* Tex. R. App. P. 47.1.

against Hi-Tech for tortious interference based on hiring.

Once the burden has shifted, the TCPA requires the plaintiff to present "clear and specific evidence" on "each essential element" of the claim. The Supreme Court has noted that "[c]lear and specific evidence is not a recognized evidentiary standard[,]" and "[a]lthough it sounds similar to clear and convincing evidence, the phrases are not legally synonymous." *In re Lipsky*, 460 S.W.3d at 589. In addition, the Supreme Court noted that the term "prima facie case" "refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *Id.* at 590.

Under the TCPA, general allegations that merely recite the elements of a cause of action will not suffice; rather, "a plaintiff must provide enough detail to show the factual basis for its claim." *Id.* at 590–91. Although the TCPA "initially demands more information about the underlying claim, the Act does not impose an elevated evidentiary standard or categorically reject circumstantial evidence." *Id.* at 591.

The elements for tortious interference with an existing contract are: (1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss. *Prudential Ins. Co. of Am. v. Financial Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000) (citing *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 430 (Tex. 1997)).

The TCPA requires proof by clear and specific evidence of each of these elements. *In re Lipsky*, 460 S.W.3d at 592–93. Without any citation to the record, 2 Savages points to admissions by Hi-Tech that it hired and continued to employ MacDonald and that they competed with 2 Savages. 2 Savages also states that "Plaintiff Lowry named numerous companies he'd lost business from after MacDonald's leaving."

22

However, to satisfy the TCPA, "a plaintiff must provide enough detail to show the factual basis for its claim," including how the defendants "damaged the plaintiff." *Id.* at 591. "[G]eneral allegations that merely recite the elements of a cause of action . . . will not suffice." *Id.* at 590–91. Additionally, "[b]are, baseless opinions do not create fact questions, and neither are they a sufficient substitute for the clear and specific evidence required to establish a prima facie case under the TCPA." *Id.* at 592–93.

We conclude that 2 Savages fell short of presenting prima facie evidence because they failed to present "clear and specific evidence" that in hiring MacDonald, Hi-Tech willfully and intentionally interfered with the Non-Compete Agreement. To prove willful and intentional interference, 2 Savages would have to show that Hi-Tech knew of the existence of MacDonald's Non-Compete Agreement or had knowledge of facts that would lead a reasonable person to conclude that an agreement existed. *Primrose Drilling Ventures, Ltd. v. Nealwell Drilling, Ltd.*, No. 14-98-00618-CV, 2000 WL 890622, at *3 (Tex. App.—Houston [14th Dist.] July 6, 2000, no pet.) (mem. op.) (citing *Kelly v. Galveston Cty.*, 520 S.W.2d 507, 513 (Tex. Civ. App.—Houston [14th Dist.] 1975, no writ), and *Armendariz v. Mora*, 553 S.W.2d 400, 406 (Tex. Civ. App.—El Paso 1977, writ ref'd n.r.e.)).

In the first amended petition, 2 Savages alleged:

> Upon information and belief, [the Hi-Tech Parties] hired Defendant, Chad MacDonald to work for them after being informed of the Non-Compete Agreement they continued to employ Chad MacDonald in violation of the Agreement and to enrich themselves.

However, "clear and specific" evidence does not show that Hi-Tech knew or should have known an agreement existed at the time of hiring. The evidence shows that Hi-Tech was not informed of the Non-Compete Agreement until the day after it hired MacDonald. Counsel for 2 Savages sent Hi-Tech a cease and desist letter on

23

March 14, 2017, the day after Hi-Tech hired MacDonald.[10] The letter stated, "[Mr. Lowry] believes Mr. MacDonald had not explained to you that he signed a Non-Compete Agreement." In Lowry's affidavit, he points to Hi-Tech's "judicial[ ] admis[sions]" that "[i]t hired Chad MacDonald on March 13, 2017" and "[Hi-Tech] was told [MacDonald] was subject to a valid Non-Disclosure, Trade Secrets, Non-Compete Agreement on March 14, 2017." Lowry's affidavit also states that after Hi-Tech initially hired MacDonald, Lowry "felt like Hi-Tech may have been operating out of ignorance so I nicely called them, explained the problem and requested Hi-Tech to immediately cease employing [ ] MacDonald." Because there is no "clear and specific evidence" that Hi-Tech was aware or should have been aware of the Non-Compete Agreement before hiring MacDonald, there is also no evidence that Hi-Tech willfully and intentionally interfered with the Non-Compete Agreement by hiring MacDonald.[11]

2 Savages failed to meet its burden of establishing by clear and specific evidence a prima facie case for the "willful and intentional interference" element of its tortious interference claim based on hiring. As a result, the trial court erred in denying Hi-Tech's motion to dismiss on this claim. We sustain the Hi-Tech Parties'

---

[10] The letter was referenced in Lowry's affidavit and attached as exhibit B to 2 Savages' response to the motion to dismiss.

[11] Indeed, changes 2 Savages and Lowry made to their second amended petition appear to withdraw any tortious interference claim based on hiring:

> Upon information and belief, Defendant Hi-Tech hired Defendant MacDonald to work for it and— after being informed of the Non-Compete Agreement— they continued to employ Chad MacDonald in violation of the Agreement and to enrich themselves. In doing so, Defendant Hi-Tech has interfered with 2 Savages [sic] contractual agreement with its customers.

However, as explained in section E, *infra*, removal of a claim by an amended pleading does not affect a pending motion to dismiss filed pursuant to the TCPA.

fourth issue with respect to the tortious interference claim based on hiring.[12]

## E. Effect of the Nonsuit

In their fifth issue, the Hi-Tech Parties argue that the trial court erred in denying, by operation of law, the motions to dismiss by the Abatecolas and Abatecola Leasing, as well as the motion to dismiss Lowry's claim against Hi-Tech.

According to the Hi-Tech Parties, the trial court's written order denying Hi-Tech's motion to dismiss "implicitly concludes that since Appellees nonsuited their claims for tortious interference against Anna Abatecola, Robert Abatecola, and Abatecola Leasing, the motion to dismiss only proceeded as to Hi-Tech." Indeed, the trial court explicitly found that the Abatecolas and Abatecola Leasing "have been non-suited and dismissed without prejudice from this case, and that Defendant [Hi-Tech] is the sole moving defendant in this motion to dismiss under the Texas Citizens Participation Act." Consequently, the trial court only ruled on the merits of the motion to dismiss as it pertained to claims against Hi-Tech. As the Hi-Tech Parties point out, the trial court "concluded that nonsuits rendered the motion to dismiss moot insofar as it was asserted by the Abatecolas or Abatecola Leasing."

At the same time, the Hi-Tech Parties contend, "There was no ruling at all on the motion to dismiss asserted by Anna Abatecola, Robert Abatecola, and Abatecola Leasing." The Hi-Tech Parties assert there was also no ruling on Hi-Tech's motion to dismiss Lowry's subsequently nonsuited claims against Hi-Tech. The Hi-Tech Parties assert that because the trial court did not deny the motion to dismiss insofar as it addressed these claims, the motion was denied by operation of law under

---

[12] Although Hi-Tech also challenges 2 Savages' ability to show a prima facie case of other elements of tortious interference with "clear and specific" evidence, we do not reach these arguments in light of our holding on the "willful and intentional" element. *See* Tex. R. App. P. 47.1.

sections 27.005(a) and 27.008(a) of the TCPA.

The Hi-Tech Parties assert that the nonsuit or removal of a claim by an amended pleading does not affect their right to statutory relief as requested in a pending motion to dismiss filed pursuant to the TCPA. The Hi-Tech Parties therefore suggest this court should proceed to analyze its motion as to the claims against the Abatecolas or Abatecola Leasing, as well as Lowry's claim against Hi-Tech. In support of this argument, the Hi-Tech Parties cite *Ford v. Bland*, No. 14-15-00828-CV, 2016 WL 7323309, at *5 (Tex. App.—Houston [14th Dist.] Dec. 15, 2016, no pet.) (mem. op.).

The Hi-Tech Parties point out that 2 Savages and Lowry did not attempt to meet their burden under the TCPA, either to show the commercial speech exemption applied or prove with clear and specific evidence a prima facie case on each element of their nonsuited claims. The Hi-Tech Parties assert that 2 Savages and Lowry abandoned these efforts based on the "[erroneous] belief that the nonsuits would absolve them of sanctions liability under the TCPA." The Hi-Tech Parties argue that, with respect to the nonsuited claims, since the prima facie burden was not met and the applicability of the commercial speech exemption was not shown, the trial court should have granted the motion to dismiss and ordered a dismissal with prejudice along with fees and costs.

A party's decision to nonsuit does not affect a nonmoving party's independent claims for affirmative relief, including motions for dismissal under the TCPA. *See, e.g., CTL/Thompson Tex., LLC v. Starwood Homeowner's Ass'n, Inc.*, 390 S.W.3d 299, 300 (Tex. 2013) (per curiam); *Villafani v. Trejo*, 251 S.W.3d 466, 467 (Tex. 2008); *James v. Calkins*, 446 S.W.3d 135, 142–44 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). Although a plaintiff has an absolute right to nonsuit a claim before resting its case-in-chief, a nonsuit "shall not prejudice the right of an adverse

party to be heard on a pending claim for affirmative relief." Tex. R. Civ. P. 162; *see CTL/Thompson Tex.*, 390 S.W.3d at 300.

"[A] defendant's motion to dismiss that may afford more relief than a nonsuit affords constitutes a claim for affirmative relief that survives a nonsuit[.]" *Rauhauser v. McGibney*, 508 S.W.3d 377, 381 (Tex. App.—Fort Worth 2014, no pet.), *overruled on other grounds by Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017)). TCPA motions to dismiss survive nonsuit because, unlike a nonsuit, the TCPA motion to dismiss might also allow the movant to obtain a dismissal with prejudice, attorney's fees, and sanctions. *Walker v. Hartman*, 516 S.W.3d 71, 80 (Tex. App.—Beaumont 2017, pet. filed) (TCPA motion to dismiss survived nonsuit filed after motion to dismiss); *Rauhauser*, 508 S.W.3d at 381–83 (same). Consequently, the nonsuits and removal of claims from the petition in this case did not moot any aspect of the Hi-Tech Parties' motion to dismiss. The trial court's ruling to the contrary, and the resulting denial of the motion to dismiss as to these claims, was in error.

We do not agree, however, that *Ford v. Bland*, No. 14-15-00828-CV, 2016 WL 7323309, at *5 (Tex. App.—Houston [14th Dist.] Dec. 15, 2016, no pet.), requires us to proceed to analyze the motion with respect to the nonsuited claims. In *Ford*, this court concluded that if the movant's initial burden is met, the motion will survive the subsequent nonsuit of a claim by amendment:

> Appellants contend appellees failed to establish a prima facie case for each element of its business disparagement claim and this failure was not affected by appellees [sic] amendment of their counterclaims eliminating business disparagement after appellants moved to dismiss under the TCPA. Because appellants met their initial burden under the TCPA, their motion to dismiss survived appellees' amendment of their counterclaims. Thus the issue of whether the trial court erred by failing to grant appellants' motion to dismiss as to this claim can properly be raised on appeal.

27

*Id.* at \*2 (citations omitted). The court then proceeded to analyze the motion to dismiss as to the nonsuited claims. In *Ford*, unlike here, there was no suggestion that the trial court concluded the amendment rendered any aspect of the motion moot. The trial court's order in *Ford* did not indicate the reason for its ruling, but a letter directing the parties to mediate issued the same day stated, "I believe [appellees] have established by clear and specific evidence a prima facie case on each essential element needed to be established." *Id.* at \*6.

Appellate courts have broad discretion to remand for a new trial in the interest of justice. *See* Tex. R. App. P. 43.3(b). Remand is appropriate when a case, for any reason, has not been fully developed. *United States Fire Ins. Co. v. Carter*, 473 S.W.2d 2, 3 (Tex. 1971); *Scott Bader, Inc. v. Sandstone Prods., Inc.*, 248 S.W.3d 802, 822 (Tex. App.—Houston [1st Dist.] 2008, no pet.); *Kondos v. Lincoln Prop. Co.*, 110 S.W.3d 716, 724 (Tex. App.—Dallas 2003, no pet.).

This court recently held that remand is appropriate where a trial court has not considered the merits of a TCPA motion to dismiss. *See Hearst Newspapers, LLC v. Status Lounge, Inc.*, 541 S.W.3d 881, 894 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (remanding for consideration of TCPA motions to dismiss where trial court erroneously dismissed motions as untimely). In this case, the trial court did not address or evaluate the merits of the motion to dismiss as it applied to the nonsuited claims because it erroneously concluded the motion was moot as to those claims. We conclude that justice would be best served by remanding the issues erroneously dismissed to the trial court.

We sustain the Hi-Tech Parties' fifth issue to the extent it asserts the trial court erred by denying the motion with regard to the nonsuited claims; otherwise, we overrule the issue.

28

## F.      Constitutional Challenge

In a final effort to save its claims from application of the TCPA, 2 Savages and Lowry argue that the application of the TCPA is unconstitutional for a variety of reasons. This court recently held that we have no interlocutory appellate jurisdiction over such a challenge when the trial court's interlocutory order denying the defendants' motions to dismiss under the TCPA does not include a ruling on constitutionality. *See Hearst Newspapers*, 541 S.W.3d at 894.

The appellee in *Hearst Newspapers* argued that the TCPA was unconstitutional in its supplemental response to the defendants' motions to dismiss in the trial court. *Id.* The appellee also filed a motion to declare the TCPA unconstitutional, which the trial court denied by a separate order. On appeal, this court held we had no jurisdiction to address appellee's constitutional challenge because the statute authorizing interlocutory review, section 51.014(a)(12) of the Texas Civil Practice and Remedies Code, limits our jurisdiction to the trial court's interlocutory order denying motions to dismiss under the TCPA. *Id.* (citing *Qwest Commc'ns Corp. v. AT&T Corp.*, 24 S.W.3d 334, 336 (Tex. 2000) (per curiam), and Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(12)).

The procedural posture of this case is similar to that in *Hearst Newspapers*. Separate from its response to the motion to dismiss, 2 Savages and Lowry filed a "First Supplemental Answer to T.C.P.A. Invoking Texas and U.S. Constitution" that sought to declare the TCPA unconstitutional. The first supplemental answer recited all the same constitutional challenges 2 Savages and Lowry now assert on appeal. In their supplemental response to the motion to dismiss, 2 Savages and Lowry also advanced the constitutional argument, originally raised in their first supplemental answer, that the "Texas Attorney General is a mandatory party to this proceeding because Plaintiffs challenge the constitutionality of the Statute in its application to

29

them." The trial court did not rule on the constitutional challenges in its August 4, 2017 order denying the motion to dismiss or otherwise. Consequently, we cannot consider 2 Savages and Lowry's argument that the TCPA is unconstitutional on interlocutory appeal. *See id.*

## G. Attorney's Fees

In the Hi-Tech Parties' third issue, Hi-Tech contends the trial court erred in finding that Hi-Tech was liable for costs and attorney's fees. Hi-Tech asserts that because the trial court did not find that Hi-Tech's motion to dismiss was "frivolous or solely intended to delay," as required by section 27.009(b) of the Civil Practice and Remedies Code, the award was made in error.[13] Hi-Tech points to *Fawcett v. Grosu*, 498 S.W.3d 650, and *Sloat v. Rathburn*, 513 S.W.3d 500 (Tex. App.—Austin 2015, pet. dism'd), in support of this argument.

In *Fawcett*, the "appellants argue[d] that the trial court made no finding that appellants' motion to dismiss was 'frivolous or solely intended for delay,' as necessary for [the nonmovant] to obtain a fee award." 498 S.W.3d at 666. This court agreed, and reversed and remanded for further proceedings, including for a finding of whether the motion to dismiss was frivolous or solely for purposes of delay. *Id.*

Similarly, in *Sloat v. Rathburn*, the trial court awarded the nonmovant fees under section 27.009(b) but did not make a finding that the motion to dismiss was frivolous or was solely intended for delay. 513 S.W.3d at 510. Instead, the trial court stated in its order, "the Court declines to conclude the Defendants' motions, in

---

[13] In a footnote in its appellate brief, Hi-Tech also argues the trial court should not have awarded "expenses" under Section 27.009(b) because the subsection only permits the trial court to award "court costs and reasonable attorney's fees." Because this argument was not raised before the trial court, we do not address it here. *See* Tex. R. App. P. 33.1.

and of themselves are frivolous, but the Court does conclude that the method in which the motions were litigated . . . resulted in hours upon hours of courtroom time that could have been better spent elsewhere." *Id.* The court of appeals concluded the trial court's finding could not be construed to support an award under section 27.009(b), and that in "the absence of such a finding, an award of attorney's fees [wa]s not authorized by the statute." *Id.*

2 Savages and Lowry respond to this issue by arguing that the motion to dismiss was frivolous and solely for the purposes of delay. In addition, they argue the appeal of an attorney's fees award is premature because the trial court did not determine the amount of attorney's fees before the appeal. 2 Savages and Lowry do not cite to any finding by the trial court that the motion to dismiss was frivolous or filed solely for the purposes of delay. Nor do they address the cases cited by Hi-Tech.

In fact, the trial court's order awarding attorney's fees and costs does not include a finding that the motion to dismiss was frivolous or filed solely for the purposes of delay. Instead, the court found Hi-Tech "knew or should have known of the exclusion of the TCPA (described herein)." The court's statement does not constitute a finding that the motion to dismiss was frivolous or filed solely for delay.

Based on our precedent in *Fawcett* and the reasoning of *Sloat*, we conclude the trial court improperly ruled that 2 Savages and Lowry were entitled to attorney's fees without finding that the motion to dismiss was frivolous or was solely intended to delay. *See Fawcett,* 498 S.W.3d at 665–66; *Sloat*, 513 S.W.3d at 510 (quoting *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 95 (Tex. 1999), which held "a prevailing party cannot recover attorney's fees from an opposing party unless permitted by statute or by contract between the parties"). Moreover, we are not persuaded that the appeal of this issue is premature; the trial court ruled on the

recoverability of costs and fees and Hi-Tech appeals the court's legal authority to award costs and fees, not the amount of attorney's fees or costs awarded.

For these reasons, and also because the results obtained by the parties have changed as a result of our opinion, we conclude that the award of fees must be reversed and remanded[14] for further proceedings, including but not limited to a determination of whether the motion to dismiss was frivolous or solely for purposes of delay, as well as any request by Hi-Tech for fees. *See* Tex. Civ. Prac. & Rem.

---

[14] Remand is also appropriate in light of the trial court's bifurcation of the merits and attorney's fees issue. *See* Tex. R. App. P. 43.3(b). At the July 14, 2017 hearing on the motion to dismiss, the trial court bifurcated the issue of attorney's fees:

> Ms. Palm [Attorney for Hi-Tech]: So we were just getting our fees up to the point of what they would be; but we could bifurcate the issue, which is also done in this motion to dismiss, where the Court rules on the motion to dismiss; and then they usually just submit an affidavit of the fees; and it can be after the motion to dismiss; but that's how it's done in other cases because the statute says the Court looks at the pleadings and affidavits.
>
> The Court: Right.
>
> Ms. Palm: So that's why we just submitted the affidavit and we're happy—the Court can look at it now or after the motion to dismiss—
>
> The Court: Okay.
>
> Ms. Palm: —but it's up to the Court's discretion on how you want to do that.
>
> The Court: All right.
>
> Mr. Clements [Attorney for 2 Savages]: And my understanding, Your Honor, that the way that it would work is that, first, the Court has to consider whether or not the SLAPP Statute even applies and so we don't really get to the [attorney's fees] affidavit; but, yes, if—when we get to that stage, we wouldn't want that stage to happen today without us being given the proper notice. And for that reason, we would be asking for a continuance on that issue.
>
> The Court: Okay. All right. So we'll bifurcate. Everyone's in agreement on that?
>
> Ms. Palm: That's fine, Your Honor.
>
> Mr. Clements: Thank you, Your Honor.

Although the bifurcation was in response to the Hi-Tech Parties' request for attorney's fees, the court and the parties agreed that the court's initial ruling would be limited to the application of the statute. 2 Savages could have reasonably expected to have another opportunity to present support for any award of attorneys' fees sought.

Code Ann. § 27.009(a)–(b). We sustain the Hi-Tech Parties' third issue.

### III. CONCLUSION

We affirm the trial court's order insofar as it denied Hi-Tech's motion to dismiss 2 Savages' tortious interference claims based on continued employment and interference with customers. We reverse the trial court's order insofar as it denied Hi-Tech's motion to dismiss 2 Savages' tortious interference claim based on hiring, denied the Hi-Tech Parties' motion to dismiss as moot with regard to nonsuited claims, and awarded attorney's fees and costs. We remand the case to the trial court for further proceedings consistent with this opinion.


/s/     Marc W. Brown
Justice


Panel consists of Justices Brett Busby, Brown, and Jewell.